IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES *ex rel.* ) | |
| ) | |
| HEATHCOTE HOLDINGS CORP, INC., ) | |
| An Illinois Corporation, Relator, ) | |
| ) | Honorable Elaine E. Bucklo |
| *Plaintiff,* ) | |
| ) | Case No. 09 C 06722 |
| v. ) | |
| ) | JURY DEMANDED |
| WILLIAM K. WALTHERS, INC., a Wisconsin ) | |
| Corporation d/b/a DARDA TOYS, ) | |
| ) | |
| *Defendant.* ) | |

## HEATHCOTE'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1(a)(3), plaintiff, the United States *ex rel.*, Heathcote Holdings Corp, Inc. ("Heathcote"), by and through its attorneys, submits the following statement of material facts as to which there is no genuine issue. Heathcote contends that the law applicable to the facts below supports entry of summary judgment as to liability in favor of Heathcote and against William K. Walthers, Inc. ("Walthers") on all Counts of Heathcote's Complaint.

### Parties, Venue & Jurisdiction

1. Heathcote is an Illinois corporation with its principal place of business in Cook County, Illinois. *See* Exhibit A, Secretary of State Report.[1]

2. Walthers is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. *See* Exhibit B, Walthers' Amended Answer at ¶ 6.

---

[1] All exhibits are compiled in a separate Plaintiff's Appendix of Exhibits in Support of Summary Judgment.

3. Venue is proper in this District under 28 U.S.C. §§ 1391(c) and 1395(a), because the products that are the subject matter of this case were and are offered for sale and sold in this District. *Id.* at ¶ 12.

4. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). *Id.* at ¶ 11.

### Walthers Acquires the Darda Product Line

5. In July of 2005, Walthers acquired the Toy and Hobby Division of Life-Like Products, which included a product line known as the Darda product line. *Id.* at ¶ 10.

6. The Darda products consist of pull-back miniature cars and accessories sold through a variety of mass and specialty retailers. *See* Exhibit C at WAL 000058.

7. Darda products typically sell between $7 and $100 per unit, depending on the model. *Id.*

8. As indicated in the Closing Documents for the Sale of the Assets of Life-Like Products LLC to WM. K. Walthers, Inc., dated July 13, 20005, the only patent acquired by Walthers applicable to the Darda product line was U.S. Patent number 4,832,156 ("the '156 patent"). *See* Exhibit D, Closing Documents at WAL000158; Exhibit E, Walthers[2] Dep. at 67, 87, 89.

9. Walthers did not acquire any of the following patents: U.S. Patent No. 2,981,098 ("the '098(2) Patent"); U.S. Patent No. 3,812,933 ("the '933 Patent"); U.S.

---

[2] Defendant identified and produced J. Philip Walthers to testify as the corporate representative pursuant to Federal Rule Civil of Procedure 30(b)(6).

Patent No. 3,981,098 ("the '098 Patent"); and U.S. Patent No. 4,053,029 ("the '029 Patent"). *See* Exhibit E, Walthers Dep. at 40-42.

10. Walthers was represented by counsel and investment bankers in assessing information as part of the due diligence process associated with the acquisition of assets from Life-Like Products. *See* Walthers Dep. at 16.

11. As part of its due diligence, Walthers specifically requested documentation concerning the "[p]atents for Darda, Racing, Track." *See* Exhibit F at WAL000172.

12. Walthers' counsel was involved in intellectual property due diligence. *See* Exhibit G, WAL004190.

13. Walthers counsel registered the assignment of the '156 patent with the United States Patent and Trademark Office. *See* Exhibit H, U.S. Patent and Trademark Office printout (used as Exhibit 3 to the Walthers deposition).

14. Walthers knew what assets the company acquired from LifeLike, and the company knew that it did not acquire the '098, '098(2), '933, or '029 patents. *See* Exhibit E, Walthers Dep. at 140-141.

15. After it acquired the Darda line, Walthers changed the packaging in order to ensure that its name and contact information appeared. *See id.* at 75.

16. Walthers also continued to mark Darda packaging with the following patents:

- United States Patent No. 2,981,098 ("the '098(2) patent")
- United States Patent No. 3,981,098 ("the '098 patent")
- United States Patent No. 3,812,933 ("the '933 patent")

3

- United States Patent No. 4,053,029 ("the '029 patent")
- United States Patent No. 4,832,156 ("the '156 patent").

*See* Exhibit I, Walthers' Answers to First Set of Interrogatories at ¶ 1

### Walthers Falsely Marks The Darda Products

17. The '933 patent expired no later than May 28, 1991, approximately fourteen years prior to Walthers acquisition of the Darda product line. *See* Exhibit B. Walthers' Amended Answer at ¶ 23.

18. The '098 patent expired no later than September 21, 1993, approximately twelve years prior to Walthers acquisition of the Darda product line. *See* Exhibit B, Walthers' Amended Answer at ¶ 31.

19. The '029 patent expired no later than October 11, 1994, approximately eleven years prior to the Walthers acquisition of the Darda product line. *See* Exhibit B, Walthers' Amended Answer at ¶ 39.

20. The '098(2) patent was issued on October 9, 1957, and it expired before Walthers acquired the Darda product line. (*Id.*, ¶¶ 14, 56).

21. The '098(2) patent's claims do not apply to, and therefore, do not cover the Darda product line. *See* Exhibits B and E, Walthers' Amended Answer at ¶ 64; Walthers Dep. at 150.

22. Between 2005 and October 27, 2009, Walthers marked over 120 different Darda products with the '098, '098(2), '029 and '933 Patents, *i.e.*, patents that were either expired, inapplicable, or both, and patents that Walthers never owned. *See* Exhibit I, Walthers' Answers to First Set of Interrogatories ¶¶ 1-2.

23. The package sample used as Exhibit 14 at the deposition of J. Philip Walthers is an example of a Darda product marked with the '933 Patent, the '098 Patent and the '029 Patent, even though Walthers never owned those patents. *See* Exhibit J.

24. Walthers admits that the statement on Walthers' packaging that the '098(2) Patent applied to a Walthers/Darda product was a false statement. *See* Exhibit E, Walthers Dep. at 151.

25. Walthers admits that the '098, '098(2), '933, and '029 Patents should not have been on any of the Darda packaging. *See* Exhibit E, Walthers Dep. at 184.

26. Walthers admits that the '156 Patent should not have been on the packaging after it expired. *Id.* at 151.

27. The decisions about what to include on packaging are company decisions. *See* Walthers Dep. at 134.

28. Walthers utilized checklists, reviewed by multiple people, to review the packaging for Darda products to assure that all elements that needed to be present on the packaging were in fact present on the packaging. The company wanted to be sure nothing would get left behind. *See* Exhibit I, Walthers' Answers to First Set of Interrogatories at ¶ 19; Exhibit K, Korolevich Dep. at 27; Exhibit E, Walthers Dep. at 75, 86-87; Exhibit L, WAL000125; Exhibit M, WAL000132.

29. Walthers' packaging checklists included specific patent numbers as items that should appear on Darda packaging, and it was the company's intent that these patent numbers be included on their packaging. *See* Exhibit K, Korolevich Dep., 20:7-19; 22:11-23:14; Exhibit M, WAL-000132; Exhibit L, WAL000125.

5

30. The information on the packaging consists of "all the things we've [Walthers] determined that should be on the package." Exhibit E, Walthers Dep. at 90.

31. Walthers' checklist included patents that Walthers did not acquire when it acquired the Darda product line. Exhibit E, Walthers Dep. at 87, 89.

32. If any of the packaging failed to include the patent numbers, Walthers would specifically instruct the designers to include the patents. *See* Exhibit M, WAL000132; Exhibit K, Korolevich Dep. at 21-23.

### Walthers Intends The Public To Rely On Its Packaging As Truthful

33. Walthers' intent was to make sure that the patents appeared on the packaging. Korolevich Dep. at 21-23.

34. The information included on Walthers' checklist is information that is important to Walthers and that "we've determined that should be on the package." Exhibit E, Walthers Dep. at 90-91.

35. Walthers makes an effort to ensure that its packaging is truthful. Walthers wants to communicate truthful information to the public, including retailers who will carry its products. *Id.* at 94-96.

36. Walthers intends that the public can look at its packaging and rely on it as truthful. *See* Walthers Dep. at 96-97; Exhibit K, Korolevich Dep. at 31.

37. Walthers expects and intends that information concerning the patents would be truthfully provided on its packaging. *Id.* at 98.

38. Walthers admits that if someone were to have seen the patent markings on its packaging, that person would be expected to be able to rely on that information as a truthful recitation of Walthers' patent rights. *Id.* at 101.

39. Walthers included patents that it did not own, that expired and/or that did not apply because Walthers did not care: "I would have to say they probably didn't care because we never paid any attention to it. And if that's the definition of not caring, then we didn't care. The patents were never important." *See* Exhibit E, Walthers Dep. at 103.

40. Walthers also included the '098, '098(2), '933, '029 and '156 Patents on its catalogs that it provides to retailers, with the intent that the retailers can rely on the information as true. *See* Exhibit E, Walthers Dep. at 164-66.

41. After this lawsuit was filed, Walthers removed the false patent markings from its packaging. *See* Exhibit I, Walthers' Answers to First Set of Interrogatories ¶ 14

42. It was not complicated or cost-prohibitive for Walthers to remove the false patent markings, and there was nothing that prevented Walthers from removing the patent markings at the time of the acquisition—there were no financial barriers and no mechanical barriers. *See* Exhibit E, Walthers Dep. at 183-84; Exhibit K, Korolevich Dep. at 31.

43. Walthers removed the patents because it knew it did not own certain of the patents listed. *See* Exhibit E, Walthers Dep. at 184.

44. J. Philip Walthers, the corporate representative, testified on behalf of the company and admitted that he was able to ascertain that the marks should not have been included even without talking with counsel. *Id.* at 176, 185.

45. Walthers does not dispute that the patents it removed from the packaging should not have been on the packaging. *Id.* at 184.

Respectfully Submitted,

*HEATHCOTE HOLDINGS CORP., INC.*

By: /s Matthew S. Miller

Matthew S. Miller
LAW OFFICES OF MATTHEW S. MILLER, LTD.
111 W. Washington, Suite 1100
Chicago, IL 60602
(312) 251-6066

Richard J. Prendergast
Michael T. Layden
RICHARD J. PRENDERGAST, LTD.
111 W. Washington, Suite 1100
Chicago, IL 60602
(312) 641-0881