**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES *ex rel*. | ) |
| | ) |
| HEATHCOTE HOLDINGS CORP, INC., | ) |
| An Illinois Corporation, Relator, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Case No. 1:09-CV-06722 |
| v. | ) |
| | ) The Honorable Elaine E. Bucklo |
| WILLIAM K. WALTHERS, INC., a Wisconsin | ) Presiding |
| Corporation d/b/a DARDA TOYS, | ) |
| | ) |
| *Defendant.* | ) |

**PLAINTIFF'S COMBINED REPY IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Michael T. Layden
Allen A. Buchta
RICHARD J. PRENDERGAST, LTD.
111 W. Washington, Suite 1100
Chicago, IL  60602
(312) 641-0881

Matthew S. Miller
LAW OFFICES OF MATTHEW S.
MILLER, LTD.
111 W. Washington, Suite 1100
Chicago, IL 60602
(312) 251-6066

## I.     INTRODUCTION

The motion for summary judgment filed by the defendant William K. Walthers, Inc. (hereinafter "Defendant") asks this Court for a finding of non-liability.  Defendant seeks this finding of non-liability despite the fact that it marked products with patents that it knew it never owned.

The pertinent facts are not in dispute, as shown by Defendant's response to Heathcote's Local Rule 56.1 Statement of Undisputed Facts.  The undisputed facts establishing the following:

- Defendant never owned United States Patent No. 2,981,098; 3,981,098; 3,812,933; or 4,053,029 (hereinafter referred to as the "Un-owned Patents");

- Defendant knowingly and intentionally marked products with the un-owned patents;

- Defendant marked products with the un-owned patents even though it never it never acquired those patents when it acquired the products at issue in this case;

- Defendant acquired one patent—patent number 4,832,156—but then continued to mark products with that patent even after it expired;

- Defendant wanted the public to rely on its packaging as truthful, and expected and intended that the public would rely on the marked patents as truthful.

Unable to escape from these critical facts, Defendant has tried to create the mirage of two distinct legal entities—one that marked the products (referred to as Beth's team), and one that sold the product (Defendant).  This arguments reeks of desperation. Defendant knows that there is only one entity that has been sued in this case:  William K.Walthers, Inc.   There is no entity known as "Beth's team."  Beth's team is nothing more than the Walthers' employees who handled the packaging, and who intentionally included patents that did not apply.   The fact that Walthers did not tell its employees

what it did and did not own is no defense. Instead, that is further evidence of the company's willful disregard for the law.

In essence, Defendant requests that the Court ignore its utter lack of any reasonable belief that the Darda products were properly marked with applicable patent numbers. Defendant wants the Court to accept the proposition that it cannot be responsible for its false marking based on the theory that it never communicated with its employees about the patents. Were this Court to lend credence to Defendant's argument, the effect would be to create a willful-blindness affirmative defense to any false marking action, whether brought by a relator or a competitor. Allowing the creation of such a defense would eviscerate the enforceability of the statute.

Quite simply, the corporate principal, in this case, Defendant Walthers, is charged with the knowledge of facts obtained by its agents if those facts were obtained within the scope of the agent's employment. Defendant's agents have testified that, at the time of the time of the acquisition of the Darda product line, (1) Defendant was aware that only one patent had been obtained, the '156 patent; (2) Defendant, as assignee on the '156 patent, registered the same with the USPTO; (3) Defendant took affirmative steps to alter the packaging copy to include its corporate logo and trademark information; and (4) Defendant took affirmative steps to assure that the inapplicable patent numbers (the '098, '098(2), '933 and '029 patents) remained on the packaging, despite knowing that the only patent acquired was the '156 patent. According to Defendant's Rule 30(b)(6) deponent, these decisions about what to include on its packaging were "company decisions."

Despite Defendant's attempt to mischaracterize Heathcote's treatment of 35 U.S.C. § 292 as something akin to a strict liability statute, the fact of the matter is that the

Defendant, other than its testimony that it did not care, has simply failed to offer any evidence of a reasonable belief that the product in question was properly marked. Defendant's further attempt to separate itself from its own agents ("Beth's team") that were involved in the decision to falsely mark falls flat. Considering that Beth's team's decision to falsely mark was clearly made within the scope of her employment, "Beth's team" <u>is</u> Defendant.

As such Defendant has failed to rebut the presumption of unlawful intent that arises under the applicable Federal Circuit precedent. Accordingly, Defendant's motion for summary judgment must be denied and the court should grant summary judgment in favor of plaintiff.

## II.     LEGAL STANDARD

Summary judgment is only appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Steen v. Myers,* 486 F.3d 1017, 1021 (7th Cir. 2007) (*citing* Fed.R.Civ.P. 56(c)). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nor may the court make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" when considering a motion for summary judgment. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment should be denied. *Anderson,* 477 U.S. at 248.

### III.    APPLICABLE LAW

Congress intends the public to rely on patent marking as a ready and reliable means for determining the status of intellectual property. *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356 (Fed. Cir. 2005); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989).   There also is an important public interest in allowing full and free competition and the use of ideas that, in actuality, are part of the public domain. *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969).   These policy interests are undermined by false markings because false markings deceive the public into thinking that a patentee controls the item in question and places the risk of error and increased burden on the public rather than the manufacturer or seller of the product. *See Clontech*, 406 F.3d at 1356-57.

In order to prove that defendant violated § 292, plaintiff must show that defendant (i) marked an unpatented articled, and (ii) acted with an intent to deceive. *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). An item covered by a now-expired patent is unpatented for purposes of § 292 liability.[1] *Pequignot v. Solo Cup Co.*, 6008 F. 3d 1356, 1361 (Fed. Cir. 2010).

To show that defendant acted with mal-intent, Heathcote must show by a preponderance of the evidence that defendant lacked a reasonable belief that the items in question were properly marked. *Id.*   "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech*, 406 F.3d at 1352.  Under *Clontech*, proof that Defendant's markings were false

---

[1] There is no dispute in this case that the patents in question were expired and that, in addition to having been expired, the '098(2) Patent did not apply to the item marked.

and that Defendant knew they were false will give rise to a presumption of unlawful intent. *Pequignot*, 608 F. 3d at 1363. The undisputed facts in this case establish that not only were Defendant's patent markings false, but also that Defendant was aware that the patents were false.

In order to rebut the presumption, Defendant must show, by a preponderance of the evidence, that it had a good faith or reasonable belief that its actions were appropriate. *Id.* at 1364; *Bon Tool*, 590 F.3d at 1300. Defendant however must do more than merely assert that it did not intend to deceive. Defendant must come forward with actual evidence of a good faith belief that its markings were appropriate. *Clontech*, 406 F.3d at 1352. An assertion by a party that it did not intend to deceive, standing alone, is worthless to prove a lack of intent to deceive where there is knowledge of falsehood. *Id.*; *Bon Tool*, 590 F.3d at 1300.

Applying those standards to this case, the Court should deny the Defendant's motion for summary judgment and rule in favor of Heathcote on its pending motion for summary judgment.

## IV. ARGUMENT

Defendant asserts that this Court should determine that its false marking of the Darda product line was inadvertent (*i.e.* that the left hand did not know what the right hand was doing). Defendant ignores, however, the well-settled legal principle that a corporation is charged with the knowledge of its agents if the knowledge was acquired in the course or scope of their employment. This imputation of knowledge to the corporate principal applies equally in both the civil and criminal contexts.

As such, the corporate principal is deemed to have been imbued with the knowledge of its agents. It is not as if the knowledge of one agent is deemed to exist in a vacuum outside or isolated from the knowledge of the principal or another agent. In this matter and on this record, there is no doubt that knowledge sufficient to establish a violation of § 292 is present.

### 1. Defendant knew that it did not acquire the '098, '098(2), '933 and '029 patents

Knowledge that is obtained by corporate employees acting within the scope of their employment is imputed to the corporation. *U.S. v. One Parcel of Land*., 965 F.2d 311, 316 (7th Cir. 1992); *See, e.g., United States v. Bank of New England, N.A.,* 821 F.2d 844, 856 (1st Cir.1987), *cert. denied,* 484 U.S. 943 (1987) (discussing general agency principles in the context of corporate criminal liability). Acting within the scope of employment entails more than being on the corporate employer's premises, rather, it means acting with the intent to benefit the employer. *U.S. v. One Parcel of Land*., 965 F.2d at 316; *citing to D & S Auto Parts, Inc. v. Schwartz,* 838 F.2d 964, 967 (7th Cir. 1988), *cert. denied,* 486 U.S. 1061 (1988); *accord United States v. Cincotta,* 689 F.2d 238, 241-42 (1st Cir.1982), *cert. denied sub nom. Zero v. United States,* 459 U.S. 991 (1982) (acting within the scope of agency defined as acting as authorized and motivated at least in part by an intent to benefit the corporation).

J. Philip Walthers (hereinafter referred to as "Mr. Walthers"), the Defendant's Rule 30(b)(6) deponent, testified that, in relation to the Defendant's acquisition of the Darda product line, he was involved with due diligence and worked with counsel and a local investment bank during the acquisition process. (*See* Defendant's Response to Heathcote's Local Rule 56.1 Statement of Undisputed Facts, p. 3, Response to 10).

Contrary to his claiming to have not cared about patents at all, Mr. Walthers was interested enough in the patents acquired during the Darda acquisition to direct the Defendant to "check to see if the patents were recorded on the balance sheet…" (*See Id.*, p. 4, Response to 11).

What this check undoubtedly revealed was that the only patent acquired by the Defendant during the purchase of Life-Like that was applicable to the Darda Products was the soon to expire U.S. Patent No. 4,832,156 ("the '156 patent"). (*See Id*., p. 3, Response to 8). Defendant's counsel subsequently registered the assignment of the '156 patent with the U.S.P.T.O. (*See Id*., p. 5, Response to 13). Defendant did not acquire, nor did they attempt to register an assignment of interest with the U.S.P.T.O. on any of the following patents: U.S. Patent Nos. 2,981,098 ("the '098(2) patent"), 3,981,098 ("the '098 patent"), 3,812,933 ("the '933 patent") and 4,053,029 ("the '029 patent"). (*See Id*., pp. 5-6, Response to 16). Additionally, the '098(2), '098, '933 and '029 patents had all expired prior to Defendant's acquisition of the Darda Product line. (*See Id*., pp. 6-7, Responses to 17-21).

As Defendant's agents were aware that the only acquired patent applicable to the Darda Product line was the '156 patent, Defendant could not have had any reasonable belief that it had acquired any rights in the '098(2), '098, '933 and '029 patents. Yet Defendant took steps to affirmatively mark the Darda Products with the aforementioned patent numbers that it could not have reasonably believed applied to the products.

> **2.     Defendant knew that it did not acquire the '098, '098(2), '933 and '029 patents, yet took affirmative steps to falsely mark the Darda Products.**

Defendant took steps subsequent to the acquisition of the Darda product line to change the packaging on the line to include, *inter alia*, its corporate name and contact

information. (*See Id.*, p. 5, Response to 15). Defendant's agent in charge of packaging, Beth Korolevich, testified that a packaging checklist was utilized by Defendant to assure that "certain elements," including the patents at issue (the '098(2), '098, '933 and '029 patents) in this matter were included on subsequent versions of the Darda packaging. (*See Id.*, pp. 9-10, Responses to 29, 33).

Most importantly for this matter, this "checklist" consisted of all the things that Defendant determined should be on the packaging, which included the '098(2), '098, '933 and '029 patents. (*See Id.*, pp. 8-10, Responses to 28, 30-31, 34). And the decisions about what to include on the packaging were "company decisions" when those decisions were made within the scope of an agent's employment. (See *Id.*, p. 8, Response to 27).

Defendant has not claimed nor has it averred anywhere in the record that its decision to include the inapplicable patent numbers was a decision that was made outside of the scope of any of its agent's employment, as such, the false marking of the products in question with the inapplicable patent numbers should be deemed by this Court to have been a "company decision."

3. **Defendant's primary defense to this action requires the Court to determine that the actions of an agent, taken within the scope of the agent's employment, do not bind the principal.**

As a bar to Heathcote's action, Defendant asks this Court to accept as fact Mr. Walther's self-serving claims of "not caring" about patents as proof of a lack of intent to deceive, as if willful blindness of a statute or regulation would suffice to absolve a Defendant of wrongdoing. In its motion, Defendant characterizes its actions as mere "inadvertence," however, an analysis of the facts developed in this record demonstrates that Defendant's characterization is simply incorrect.

In reality, Mr. Walthers was concerned enough about patents to make sure he received credit on his "balance sheet" for them (*See Id.*, p. 4, Response to 11). Furthermore, Ms. Korolevich's purposeful inclusion of the patents in question on the Darda packaging was a decision made within the scope of her employment and was a result of her utilization of Defendant's "checklists." (*See Id.*, p. 9, Response to 29).

If this Court refuses to accept Defendant's willful blindness affirmative defense - as it should - then it must conclude that Heathcote has established that Defendant's patent markings were false and that Defendant's agents, and hence the corporate principal knew they were false. Under Federal Circuit precedent, this gives rise to a presumption of unlawful intent. *Pequignot*, 608 F. 3d at 1363. In order to rebut the presumption, Defendant was required to show, by a preponderance of the evidence, that it had a good faith belief that its actions were appropriate. *Id.* at 1364. In so doing, Defendant must do more than merely assert that it did not intend to deceive: it must come forward with actual evidence of a good faith belief that its markings were appropriate. *Id.*

Defendant has not, nor can it, put forth any evidence of a good faith belief that its actions were appropriate. Unable to run from the facts, Defendant has relied heavily on cases that pre-date *Clontech.* Since those cases arose before the courts defined the presumption applicable to false-marking cases, and the means to rebut the presumption, they offer little precedential value. In addition, many of the cases involved facts so different that the differences prove the point for Heathcote.

For example, in *Undersea Breathing Sys., Inc. v. Nitrox Tech., Inc.*, 985 F. Supp. 752, 781 (N.D. Ill. 1997)—the only case cited from the Northern District of Illinois (from this century or last, anyway—Defendant also cited a case from 1879, but that case merits

no discussion)—the evidence established that there was a printing error that resulted in patents being marked that the defendant did not intend to mark on packages. There was no such printing error in this case. In this case, rather, the patents were intentionally printed on the packaging. If one of Defendant's packages did not include the patents, the design team was instructed to put them on. There was nothing inadvertent at all about what Defendant did.

Defendant also has tried to construct a defense based on a theory that would somehow shift the burden to the public to notify Defendant of violations before it can be held responsible. That is not what the law requires, nor should it be. Defendant is supposed to know and follow the law. And this is not a case where Defendant unknowingly continued to mark with patents that it at one time had a right to use but that subsequently expired (which, by the way, is **not** a defense). This is a unique case where Defendant marked not only with a patent that expired soon after Defendant started using it, but it also marked with patents that it never owned **at all**. Defendant marked with these patents because it did not care enough to tell its agents that it did not own the patents, and it did not care enough to want to honestly convey information to the public. Meanwhile, Defendant also wanted the public to believe that it did, in fact, own the patents listed on its packaging (*i.e*., Defendant acted with deceitful intent).

Defendant has offered no reason for marking its products with patents that it knew should not have been on the packaging. The facts are not in dispute. It is for the Court to decide whether willful ignorance is a defense, even where, as in this case, the defendant intends and expects the public to rely on its packaging and its patent markings as true.

## V.    CONCLUSION

Not only has Defendant failed to establish in its motion that it is entitled to summary judgment, the foregoing clearly demonstrates that the Defendant, having knowledge that it acquired but a single patent applicable to the Darda Product line in its acquisition of Life-Like, could not have held any reasonable belief that the other patent numbers affirmatively included on its packaging were properly included. As such, Defendant has failed to establish any facts in support of a defense to liability under § 292. Therefore, the Court should deny Defendant's motion for summary judgment and enter summary judgment for Heathcote.

Respectfully Submitted,

*HEATHCOTE HOLDINGS CORP., INC.*

By:  _s/ Allen A. Buchta___

Michael T, Layden
Allen A. Buchta
RICHARD J. PRENDERGAST, LTD.
111 W. Washington, Suite 1100
Chicago, IL  60602
(312) 641-0881

Matthew S. Miller
LAW OFFICES OF MATTHEW S. MILLER, LTD.
111 W. Washington, Suite 1100
Chicago, IL 60602
(312) 251-6066

## <u>CERTIFICATE OF SERVICE</u>

   I, Allen A. Buchta, an attorney, certify that on Monday, December 20, 2010, I electronically filed the foregoing **Plaintiff's Combined Reply in Support of Plaintiff's Motion for Summary Judgment and Response in Opposition to Defendant's Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to the following:

David G. Hanson
Antonio M. Trillo
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202


               _s/ Allen A. Buchta _