IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex rel. | ) | |
| | ) | |
| HEATHCOTE HOLDINGS CORP., INC., | ) | |
| An Illinois Corporation, Relator, | ) | |
| | ) | |
|     Plaintiff | ) | |
|   v. | ) | No. 09 C 6722 |
| | ) | |
| WILLIAM K. WALTHERS, INC., a | ) | |
| Wisconsin Corporation d/b/a DARDA | ) | |
| TOYS, | ) | |
| | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

In this *qui tam* action, plaintiff Heathcote Holdings alleges that defendant Walthers violated 35 U.S.C. § 292 by falsely marking certain of its products with expired and inapplicable United States Patent numbers. Both parties have moved for summary judgment. For the following reasons, I grant defendant's motion and deny plaintiff's.

All agree that this case rises and falls on the issue of defendant's intent. This is because the "false marking" statute provides that "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented *for the purpose of deceiving the public*...[s]hall be fined not more than $500 for every such offense." 35 U.S.C. § 292. (Emphasis added).

1

Defendant does not dispute that it marked unpatented articles with patent numbers that were either expired or inapplicable, but it denies that it did so with intent to deceive. For either party to prevail at summary judgment, it must demonstrate the absence of any genuine dispute on this issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).

Nearly all of the facts in the record are undisputed. Defendant began selling the "Darda" product line--a line comprising toy race cars and related accessories--upon its 2005 acquisition of the Toy and Hobby Division of a company called Life-Like Products LLC. Defendant's core business, however, was manufacturing and selling model trains, and the "primary driver" behind the transaction with Life-Like was defendant's interest in Life-Like's "Proto" line of "very high quality, high-detail locomotives." Deposition of J. Philip Walthers ("Walthers Dep."), Pl.'s Exh. E at 29:21-22:22. But because Life-Like wanted to sell its entire Toy and Hobby Division, not just a single product line, defendant purchased the Darda line as an "add-on" so that it could obtain the desired Proto line. Def.'s Ans. to Interrogs., Pl.'s Exh. I at 12-13.

After the Life-Like acquisition, defendant retained certain employees in Baltimore, Maryland (defendant is

headquartered in Milwaukee, Wisconsin) who were responsible for packaging the Darda product line, and who generally continued business as usual. These employees, led by a group product manager named Beth Korolevich, continued to use their previously established procedures for determining what items should be included on Darda packaging. These items included standard graphics, copy, and logos, as well as patent, copyright, and trademark information. Korolevich's team used a checklist to confirm that all information that should be on the packaging was present. If patent information that had been displayed on prior packaging was missing, Korolevich would make a note, and someone on the team would instruct the graphic designer to use the patent numbers on the checklist.

Korolevich testified that she did not know why they listed patents on the product packaging. Korolevich Dep., Exh. K at 29:8-10. She further stated that she made no effort to verify that the patent information on the packaging was correct, *id*. at 16:25-17:3, nor did she have the knowledge or training to determine whether a particular patent number would apply to a particular product. *Id*. at 39:3-7. Korolevich believed, however, that the patent numbers needed to appear on the packaging "because they had always been there." *Id*.

3

Indeed, Darda products had been marked with the patent information at issue here long before defendant acquired the line. In fact, by the time defendant began selling Darda products, the packaging of these products identified four patents that had expired over a decade earlier,[1] including one that was directed to a device for measuring the thrust of turbo-jet airplane engines, and clearly does not cover any product in the Darda line.[2] But there is no evidence that anyone employed by defendant--either within or outside of Korolevich's team--was aware that the Darda packaging was marked with expired or inapplicable patents. Instead, the evidence reveals that the employees responsible for reviewing the packaging took for granted that the patent markings were appropriate, and that no one outside that team verified that the information was indeed accurate. While defendant's attorneys were involved in the assignment of

---

[1] The record does not reflect when the fifth patent identified on Darda packaging expired, but it was apparently sometime between the date defendant began selling the Darda products and the date defendant removed the patent number from its packing.

[2] Defendant explains in its briefs that the jet-engine patent number is one digit away from another patent, which it claims covers Darda products, and that a typographical mistake was the reason the jet-engine patent was listed. While defendant identifies no evidence to support this explanation, I agree that there is also no evidence to suggest that defendant intended to trick the public into thinking any Darda products were covered by the jet-engine patent.

4

certain intellectual property in the course of the Life-Like acquisition, they did not review Life-Like's packaging artwork or packaging checklist, nor did defendant seek counsel's advice on what it could or could not include on Darda packaging. Walthers Dep., Pl.'s Exh. E at 58:23-59:1, 155:19-156:1. Plainly, nobody focused on the substance of the Darda products' patent markings.

Meanwhile, the parties agree (curiously, it is plaintiff who asserts), that defendant generally "makes an effort to ensure that its packaging is truthful" and "wants to communicate truthful information to the public, including retailers who will carry its products." Indeed, it is undisputed that when defendant learned that the Life-Like artwork and packaging checklists used to make its Darda packaging contained expired and inapplicable patent numbers, it created an "action plan" to correct the errors, which included immediately segregating inventory and removing the patent information, and holding production of new products until its suppliers could retool their manufacturing equipment to prevent further mismarking.

On this record, no reasonable jury could conclude that defendant specifically intended to deceive the public with false patent markings. The Federal Circuit has construed violations of § 292 to require the specific intent to

5

deceive, and has further held that "[t]he bar for proving deceptive intent...is particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010). Here, there is simply no evidence that anyone knew the patent information on the Darda packaging was false, much less that anyone armed with that knowledge decided to include it anyway. (And even if someone had, that fact alone still would not be enough for liability under § 292, which requires "a purpose of deceit, rather than simply knowledge that a statement is false." *Peguignot*, 608 F.3d at 1363.)

Plaintiff tries to overcome the undisputed fact that not a single person in defendant's employ knew that the patent markings on Darda products were false by invoking the concepts of agency and collective corporate knowledge. Plaintiff relies on *United States v. One Parcel of Land*, 965 F.2d 311 (7th Cir. 1992), and *United States Bank of New England*, 821 F.2d 844 (1st Cir. 1987), to argue that knowledge obtained by corporate employees acting within the scope of their employment is imputed to the corporation, which is then deemed to possess the aggregate knowledge of its employees. But while the agency principles articulated in *One Parcel of Land* support the conclusion that the

6

corporation is responsible for the patent markings that its employees included on Darda packaging, neither agency principles nor the theory of "collective intent" suffices to demonstrate the kind of deceptive intent that is required for a violation of § 292.

As discussed above, the evidence reveals that, on the one hand, Korolevich and her team knew that Darda packaging included patent numbers; but none of these individuals knew that the listed patents had expired or did not cover the products to which they were affixed. On the other hand, the evidence shows that J. Philip Walthers, an employee of defendant who was involved in the company's due diligence at the time of the Life-Like acquisition, knew that only one patent was recorded among the assets purchased; but he apparently had no idea that Darda packaging was marked with any patent numbers at all, much less that it was marked with patents other than (or really, in addition to) the one assigned to defendant in the course of the Life-Like acquisition. In short, no single corporate agent possessed the various pieces of information necessary to form the requisite deceptive intent.

It is true that in *Bank of New England,* the First Circuit held, in the context of claims brought pursuant to the Currency Transaction Reporting Act, that a corporate

7

entity can properly be deemed to possess the "aggregate knowledge" of all of its employees, and therefore to know "the sum of the knowledge of all of the employees." 821 F.2d at 855. But plaintiff cites no authority applying this "collective scienter" theory in the context of § 292, and the cases defendant cites militate against its application. Defendant's cases, which include authority not only from the Seventh Circuit, but also from the Fifth and Ninth Circuits as well as from several lower courts, analyze the scienter requirement for claims brought pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which, like § 292, requires proof of the defendant's specific intent to deceive. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (private action for damages under securities laws requires proof of intention "to deceive, manipulate, or defraud"). In several of these cases, the court explicitly rejected the theory of collective scienter as a basis for liability. *See, e.g., Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (to determine corporate scienter, it is "appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement...rather than generally to the collective knowledge of all the corporation's officers and

8

employees acquired in the course of their employment"); *In re Apple Computer, Inc. Securities Litigation*, 127 F. App'x. 296, 303 (9th Cir. 2005) (holding that "[a] corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter at the time that he or she makes the statement," and further observing that "[w]e have squarely rejected the concept of "collective scienter" in attributing scienter to an officer and, through him, to the corporation"). *See also Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1311 (S.D. Fla. 2000)("The knowledge necessary to form the requisite fraudulent intent must be possessed by at least one agent and cannot be inferred and imputed to a corporation based on disconnected facts known by different agents").

Meanwhile, the Seventh Circuit has held that "[i]ntent to deceive is not a corporate attribute," explaining:

> Suppose a clerical worker in the company's finance department accidentally overstated the company's earnings and the erroneous figure got reported in good faith up the line to...senior management, who then included the figure in their public announcements. Even if senior management had been careless in failing to detect the error, there would be no corporate scienter.

*Makor v. Tellabs*, 513 F.3d 702, 707 (7th Cir. 2008).

9

The scenario contemplated by the Seventh Circuit in the foregoing excerpt is not dissimilar from the one here. Although Korolevich's inclusion of *some* patent markings on Darda packaging was intentional, her inclusion of *false* markings was nevertheless "accidental" because she did not realize that the markings she assumed were appropriate in fact related to expired or inapplicable patents. And while perhaps defendant's senior management may have been "careless in failing to detect the error," as contemplated in the Seventh Circuit's hypothetical scenario, § 292, like the PSLRA, requires more than carelessness as a basis for liability.

Because I conclude that defendant did not knowingly include false patent markings on Darda packaging, I need not analyze the remainder of plaintiff's legal argument, which relies on the burden-shifting analysis of *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347 (Fed. Cir. 2005) (combination of a false patent marking and knowledge that the marking was false creates a rebuttable presumption of intent to deceive the public). Plaintiff has failed to identify sufficient evidence to enable a reasonable jury to conclude that defendant acted with the deceptive intent required under § 292. Accordingly,

defendant's motion for summary judgment is granted, and plaintiff's is denied.

                                    **ENTER ORDER:**

                                    **Elaine E. Bucklo**
                                  United States District Judge

Dated: March 11, 2011